**In re DPL INC., SECURITIES LITIGATION.**

**No. C–3–02–355.**

United States District Court,
S.D. Ohio,
Western Division.

Aug. 4, 2003.

James Rubin Cummins, Waite, Schneider, Bayless, & Chesley, Co., LPA, Cincinnati, OH, Lawrence D. McCabe, Richard H. Weiss, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, New York City, Stanley Morris Chesley, Waite, Schneider, Bayless & Chesley, Co., LPA, Cincinnati, OH, Steven G. Schulman, Uri Seth Ottensoser, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, New York City, Eric S. Bravo, Kevin Jesse Osterkamp, Roetzel & Andress, Columbus, OH, Robert S. Brown, The Brown Firm, Inc., LPA, Richard Lawrence Norton, Cincinnati, OH, John Henry Stachler, Jablinski, Folino, Roberts & Martin, Dayton, OH, for Plaintiffs.

Charles Joseph Faruki, Faruki, Ireland & Cox, PLL, Dayton, OH, Eric T. Gortner, James C. Munson, Michael D. Foster, Kirkland & Ellis, Chicago, IL, Thomas Robert Kraemer, Faruki, Gilliam & Cox, PLL, Dayton, OH, Gregory A. Markel, Martin Lee Seidel, Cadwalader, Wickerslam & Taft, New York City, Mark Alan VanderLaan, Cincinnati, OH, Mary Ellen Hennessy, Steven L. Bashwiner, Katten, Muchin, Zavis, Rosenman, Chicago, IL, Michael J. Chepiga, Simpson, Thacher & Barlett, LLP, New York City, Nicole Marie Ruhenkamp, Coolidge, Wall, Womsley & Lombard, Dayton, OH, Peter Eric Kazanoff, Simpson, Thacher & Bartlett, LLP, New York City, Roger John Makley, Coolidge, Wall, Womsley & Lombard, David Carr Greer, James H. Greer, Bieser, Greer & Landis, Dayton, OH, Jeffrey Charles Sharer, Jeffrey Robert Tone, Sidley, Austin, Brown & Wood, John Henry Mulhern, Sara Kristine Rankin, Sidney, Austin, Brown & Wood, LLP, Chicago, IL, for Defendants.

**DECISION AND ENTRY OVERRULING MOTION OF THE DPL DEFENDANTS TO RETAIN JURISDICTION OVER ALREADY FILED DERIVATIVE CLAIMS (DOC. # 81); DECISION AND ENTRY OVERRULING MOTION OF DEFENDANT PRICEWATERHOUSECOOPERS FOR JOINDER IN THE DPL DEFENDANTS' MOTION TO RETAIN JURISDICTION OVER THE ALREADY FILED DERIVATIVE CLAIMS (DOC. # 86); DECISION AND ENTRY OVERRULING PLAINTIFFS' MOTION FOR ORDER DECLARING THAT STAY OF DISCOVERY IN STATE ACTIONS IS TERMINATED (DOC. # 89); DECISION AND ENTRY OVERRULING IN PART AND OVERRULING, AS MOOT, IN PART PLAINTIFFS' MOTION FOR ORAL ARGUMENT AND AN EARLY HEARING ON PLAINTIFFS' MOTION FOR ORDER DECLARING THAT THE STAY OF DISCOVERY IN THE STATE ACTIONS IS TERMINATED (DOC. # 97); DECISION AND ENTRY OVERRULING DEFENDANTS' MOTION FOR ORAL ARGUMENT (DOC. # 98); FURTHER PROCEDURES ESTABLISHED; STAY OF DISCOVERY IN STATE COURT LITIGATION MODIFIED TO BE TERMINATED UPON PLAINTIFFS' FILING OF MEMORANDUM IN OPPOSITION TO ANTICIPATED MOTION TO DISMISS**

RICE, Chief Judge.

These six consolidated federal securities actions arise out of the allegedly failed investment strategy of DPL, Inc. ("DPL"). The First Amended Complaint in one of these six consolidated actions, *Buckeye Electric v. DPL*, Case No. C–3–02–355 ("*Buckeye Electric*"), contained a state law, shareholder derivative claim, as well as claims under federal securities law.[1]

---

1. The shareholder derivative claim was also included in the initial complaint in *Buckeye Electric*, which was the first case to be filed arising out of DPL's allegedly failed investment strategy.

On September 10, 2002, barely one month after *Buckeye Electric* had been removed to this Court, the Plaintiffs in that case sought leave to file a second amended complaint, which, if granted, would have resulted in the deletion of the shareholder derivative claim from that case. *See* Doc. # 18. The Defendants opposed that motion. The complaints in the other five cases did not set forth shareholder derivative claims. In addition, five derivative actions arising out of the same factual scenario are currently pending in the Hamilton and Montgomery County Common Pleas Courts.[2] In those actions, the plaintiffs seek to recover on behalf of DPL, Inc., damages which that corporation allegedly suffered as a result of the breach of fiduciary duty by its officers, directors and accountants.

In its Decision of February 25, 2003, the Court sustained Defendants' Motion to Stay Discovery in State Actions (Doc. # 39). *See* Doc. # 76. That stay was to remain in effect until the Court had ruled upon Defendants' to-be-filed motion seeking dismissal of the Plaintiffs' federal securities claims. In order to limit the length of that stay, the Court established a schedule for this litigation, to wit: 1) the Court indicated that it would select lead Plaintiff and lead counsel within 10 days; 2) lead Plaintiff was given 20 days thereafter in which to file a final consolidated, amended complaint; and 3) Defendants were afforded a further 20 days in which to move to dismiss that pleading. *Id.* at 9. On March 4, 2003, the Court named lead counsel and the lead Plaintiffs. *See* Doc. # 78. On March 24, 2003, the lead Plaintiffs filed their Consolidated, Amended Complaint (Doc. # 83). That pleading contains only federal securities law claims. Noticeably missing from it is the state law, shareholder derivative action which was contained in the initial and first amended complaints filed in *Buckeye Electric* and is the central claim in the four derivative actions pending in state court.

Anticipating that the Plaintiffs would omit the shareholder derivative claim from their Consolidated, Amended Complaint, the DPL Defendants[3] filed a motion, even before the Plaintiffs' had filed that pleading, requesting that the Court: 1) retain supplemental jurisdiction over the then existing shareholder derivative claim initially set forth in *Buckeye Electric;* 2) preclude the Plaintiffs from deleting that claim from their consolidated, amended complaint; and 3) not require those Defendants to respond to Plaintiffs' consolidated, amended complaint, until they have set forth a shareholder derivative claim in such a pleading.[4] *See* Doc. # 81. Defendant PricewaterhouseCoopers has filed a motion joining in that filed by the other Defendants.[5] *See* Doc. # 86. The Plaintiffs, not surprisingly, have opposed those motions. *See* Doc. # 87. The Plaintiffs have also responded with their motion requesting that the Court lift the stay of discovery in *Austern Trust v. Forster,* Case No. A0207067 (Hamilton County Common Pleas Court) ("*Austern Trust*"), since the Defendants have failed to file a motion to dismiss within 20 days of the filing of the Consolidated, Amended Complaint. *See*

---

2. Three of those actions are pending in Hamilton County, while the other two were filed in Montgomery County.

3. The DPL Defendants are all the Defendants other than PricewaterhouseCoopers.

4. The DPL Defendants' motion repeated their objections to the *Buckeye Electric* Plaintiffs'

request for leave to file a second amended complaint.

5. Presumably as a result of those motions, no Defendant has answered or otherwise responded to the Plaintiffs' Consolidated, Amended Complaint.

Doc. # 89. The Defendants have opposed that motion. *See* Doc. # 93. Herein, the Court rules upon those three motions, turning first to the Defendants' motions.[6]

### I. Motion of the DPL Defendants to Retain Jurisdiction Over Already Filed Derivative Claims (Doc. # 81) and Motion of Defendant Pricewaterhouse-Coopers for Joinder in the DPL Defendants' Motion to Retain Jurisdiction Over the Already Filed Derivative Claims (Doc. # 86)

As is indicated, the Defendants request with these motions that the Court 1) retain supplemental jurisdiction over the then existing shareholder derivative claim set forth in *Buckeye Electric;* 2) preclude the Plaintiffs from deleting that claim from their consolidated, amended complaint; and 3) not require those Defendants to respond to Plaintiffs' consolidated, amended complaint, until they have set forth a shareholder derivative claim in such a pleading. The basis upon which these motions are grounded is the Defendants' contention that the shareholder derivative claim arises out of the same facts as the Plaintiffs' federal securities law claims, and, as a result, this Court can exercise supplemental jurisdiction over the shareholder derivative claim, pursuant to 28 U.S.C. § 1367. With those premises, this Court cannot disagree. In addition, the Court agrees with the Defendants that none of the exceptions to the exercise of supplemental jurisdiction, contained in § 1367(c), exist in this litigation.[7] Nevertheless, for reasons which follow, the Court overrules the Defendants' motions in their entirety.[8]

As an initial matter, the Defendants invoke the first-to-file rule and argue that this Court should retain supplemental jurisdiction over the shareholder derivative action, because *Buckeye Electric* was the first lawsuit to be filed arising out of DPL's allegedly failed investment strategy. In *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc.*, 16 Fed.Appx. 433, 2001 WL 897452 (6th Cir.2001), the Sixth Circuit discussed the first-to-file rule:

> The first-to-file rule is a well-established doctrine that encourages comity among *federal* courts of equal rank. The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit

---

**6.** In addition, the Court overrules in part and overrules, as moot, in part the Plaintiffs' Motion for Oral Argument and an Early Hearing on Plaintiffs' Motion for Order Declaring That the Stay of Discovery in the State Actions is Terminated (Doc. # 97). The issues presented by that motion do not require oral argument for resolution, and the Court rules upon the Plaintiffs' Motion for Order Declaring That the Stay of Discovery in the State Actions is Terminated (Doc. # 89) herein, rendering the other branch moot. The Court also overrules Defendants' Motion for Oral Argument (Doc. # 98), with which they requested oral argument on their request to have the Court retain jurisdiction over the shareholder derivative claim.

**7.** Section 1367(c) provides that a District Court may decline to exercise supplemental jurisdiction under the following circumstances "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

**8.** The Court has permitted Pricewaterhouse-Coopers to join in the other Defendants' request that the Court retain jurisdiction over the shareholder derivative claim; however, it has denied that accounting firm the relief it seeks with its motion, to wit: retention of jurisdiction over that claim.

was filed should generally proceed to judgment.

*Id.* at 437, 2001 WL 897452, *3 (emphasis added and internal quotation marks and citations omitted).[9] Although the Court agrees with the Defendants that *Buckeye Electric* was filed before any action pending in state court, the first-to-file rule is inapplicable, because one case has been filed in federal court and the others are pending in state court. Consistent with the suggestion of the Sixth Circuit in *Zide,* the overwhelming majority of federal courts addressing the question have held that the first-to-file rule is inapplicable in such a situation. *See e.g., Pragmatic Software Corp. v. Antrim Design Systems, Inc.,* 2003 WL 244804 (D.Minn.2003); *Healthcare Capital, LLC v. Healthmed, Inc.,* 213 F.Supp.2d 850 (S.D.Ohio 2002); *Central States Indus. Supply, Inc. v. McCullough,* 218 F.Supp.2d 1073 (N.D.Iowa 2002); *United States Fidelity & Guaranty Co. v. Petroleo Brasileiro S.A.,* 2000 WL 48830 (S.D.N.Y.2000). This Court agrees with the result reached in those cases. Indeed, applying the first-to-file rule when one case is pending in federal court and the other in a state tribunal, if the state court action were the first filed, would risk violating the "virtually unflagging obligation of federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817–18, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). If, as in the present case, the federal court case were the first to be filed, principles of comity and federalism, as well as the Anti–Injunction Act, 28 U.S.C. § 2283, would be offended by any attempt to prevent the state court from proceeding. Accordingly, this Court concludes that the first-to-file

rule has no application when one case is pending in federal and the other is pending in state court (as opposed to two cases pending in different federal courts) and that, therefore, that rule does not support this Court's retention of jurisdiction over the shareholder derivative claim.

The Defendants also argue that the Court should retain jurisdiction over the shareholder derivative claim, because to allow the Plaintiffs to file a Consolidated, Amended Complaint which did not include that claim would violate Rule 15 of the Federal Rules of Civil Procedure. It bears emphasis that the Court directed the lead Plaintiffs to file a Consolidated, Amended Complaint, since such a pleading had not been filed after the Court consolidated the six federal securities cases and appointed lead Plaintiffs and counsel. That pleading was not filed as a result of the Court giving the lead Plaintiffs leave to file an amended complaint pursuant to Rule 15. Therefore, the Defendants' premise that Rule 15 is applicable is suspect. Nevertheless, assuming for sake of argument the applicability of Rule 15, the Court concludes that permitting the Plaintiffs to file a Consolidated, Amended Complaint which did not contain the shareholder derivative claim does not violate that Rule. As the Defendants point out, a request for leave to file an amended complaint may be denied, if the opposing party opposing would suffer prejudice as a result. Simply stated, the Defendants have failed to convince the Court that they have suffered prejudice, as a result of the filing of a Consolidated, Amended Complaint which does not contain a shareholder derivative claim against them.

---

**9.** In *Zide,* the Sixth Circuit affirmed the decision of the District Court to dismiss the action pending in the Southern District of Ohio, even though it had been filed before the other action pending in the District of Kansas, because the Ohio action sought a declaratory judgment and had been filed in bad faith.

If this Court were to require the lead Plaintiffs to include the derivative shareholder claim in the Consolidated, Amended Complaint, the Defendants would be required to defend that claim in federal court as well as in state court. The Court does not understand how a defendant is prejudiced when it is not required to defend the identical claim in two separate courts. Perhaps the Defendants believe that this Court would enjoin the Plaintiffs from pursuing the state law, shareholder derivative claims in state court, should an identical claim be filed in this Court. However, the inability to request such an injunction from this Court (as a result of the shareholder derivative claim being omitted from the Consolidated, Amended Complaint) is not prejudicial, since the Anti–Injunction Act, 28 U.S.C. § 2283, would prevent this Court from enjoining the state courts from proceeding in any of the state court cases.

Section 2283 provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

Neither the first and third exceptions would permit this Court to enjoin the state court proceedings, since Congress has not expressly authorized federal courts to enjoin state law, shareholder derivative actions and, further, because this Court has not entered a judgment on the shareholder derivative claim which needs protection or effectuation.

Thus, the Defendants' request to enjoin the prosecution of the shareholder derivative actions in state court would depend upon whether such an injunction "was necessary in aid of [this Court's] jurisdiction." That exception in the Anti–Injunction Act is widely understood to apply in instances where a federal court obtains jurisdiction over a *res* in an *in rem* action and it enjoins a state court from attempting to exercise jurisdiction over the same *res*. See e.g., *In re American Honda Motor Co., Inc. Dealerships Relations Litigation,* 315 F.3d 417, 439 (4th Cir.2003). However, "support for a broader application of the 'necessary in aid of its jurisdiction' exception can be found in the Supreme Court's statement that both this exception and the third exception to the Anti Injunction Act allow federal injunctive relief against state court proceedings where it is 'necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'" *Id.* (quoting *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs,* 398 U.S. 281, 295, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970)). In *Atlantic Coast Line,* a labor dispute between a railroad and a union resulted in the railroad filing suit in federal court to enjoin the union from picketing. The District Court refused to grant that relief, after which the railroad filed an action in state court, seeking an injunction on the basis of state law. The state court granted that relief, as a result of which the union returned to the District Court and obtained an injunction preventing railroad from enforcing the state court injunction. On appeal, the Fifth Circuit affirmed, and, on further appeal, the Supreme Court reversed. The Supreme Court initially held that an injunction directed at a party, preventing it from enforcing a state court injunction, is, for purposes of the Anti–Injunction Act, an injunction of the state court proceeding. 398 U.S. at 287–88, 90 S.Ct. 1739. The Supreme Court then rejected the union's argument that the injunction of the state court proceeding was necessary "in aid of [the District Court's] jurisdiction." *Id.* at 294–96, 90 S.Ct. 1739. After setting forth the statement which is quoted above, the Supreme Court indicat-

ed that such interference was not present in that case. *Id.* at 295, 90 S.Ct. 1739. In support thereof, the Supreme Court noted that the District Court had jurisdiction over the railroad's initial lawsuit based on federal law and the state court had jurisdiction over the second, state-law based suit. *Id.* The Supreme Court also indicated that, while the railroad would have been free to submit all claims to the federal or the state court, it was not required to do so. *Id.* The Supreme Court concluded by noting that "the state and federal courts had concurrent jurisdiction in this case, and neither court was free to prevent either party from simultaneously pursuing claims in both courts." 398 U.S. at 295, 90 S.Ct. 1739. Similarly, herein, this Court has jurisdiction over the Plaintiffs' federal securities law claims, while the state courts have jurisdiction over the state law, shareholder derivative claims. In accordance with *Atlantic Coast,* this Court is not free, under the second exception to the Anti–Injunction Act, to prevent the Plaintiffs from pursuing the state law, shareholder derivative claim in state court, even though this Court might, in a given situation, exercise supplemental jurisdiction over that claim, had it been joined in the Consolidated Amended Complaint.

In addition, the Defendants have cited a number of cases in which courts have refused to permit a plaintiff to dismiss a supplemental claim to pursue it in state court. Those cases do not convince this Court that it should require the Plaintiffs to retain the supplemental, derivative shareholder claim in this litigation. For instance, in *Pinney Dock & Transport Co. v. Penn Central Corp.,* 196 F.3d 617 (6th Cir.1999), the plaintiffs brought antitrust actions against Penn Central and the Bessemer & Lake Erie R.R. Co. ("B & LE"). B & LE asserted cross-claims for contribution and indemnification against Penn Central, under both federal and state law. The District Court initially dismissed the

federal claims for contribution and indemnification, as well as the state law claim for indemnification. After the plaintiffs had settled with B & LE, the District Court denied B & LE's request to dismiss the remaining state law claim for contribution so that the matter could be pursued in state court and, subsequently, granted summary judgment to Penn Central on that claim. Upon appeal, the Sixth Circuit held that the District Court had not abused its discretion in deciding to continue to exercise supplemental jurisdiction over the state law claim for contribution, given that the District Judge had presided over that case for fifteen years and was intimately familiar with the parties and the proceedings. *Id.* at 620. Since this Court's familiarity with the shareholder derivative claim pales in comparison, *Pinney Dock* is distinguishable. In *In re Prudential Ins. Co. America Sales Litigation,* 148 F.3d 283 (3rd Cir.1998), the Third Circuit concluded that the District Court had not abused its discretion in approving the settlement of a class action which resolved both federal and state law claims, even though some members of the class had objected to the settlement of the state law claims and argued that those claims should be dismissed so that they could be pursued in state court. That decision does not remotely suggest that this Court must, or even should, retain supplemental jurisdiction over the state law, shareholder derivative claim herein.

In their Reply Memorandum (Doc. # 92), the Defendants rely upon *In re Lutheran Brotherhood Variable Ins. Prods. Co. Sales Practices Litigation,* 105 F.Supp.2d 1037 (D.Minn.2000). Therein, the plaintiffs, who were purchasers of variable and non-variable life insurance policies, brought class actions against the defendant, charging it with fraud. Since the variable life polices were deemed to be "covered securities" under the Securities

Litigation Uniform Standards Act ("SLU-SA"), Pub.L. 105–353, 112 Stat. 3227, the cases could be removed to federal court in accordance with 15 U.S.C. § 77p(c). After numerous requests for remand had been denied, the plaintiffs requested that the court sever and remand or dismiss without prejudice the claims of plaintiffs who had purchased non-variable life polices. Since those policies were not "covered securities" under the SLUSA, there was no independent basis for exercising federal question jurisdiction over them. The District Court denied that request, concluding that it would exercise supplemental jurisdiction over the claims of the purchasers of non-variable life policies. The court concluded that, since complex discovery including millions of pages of documents would be necessary to resolve all claims, judicial economy required that all claims be resolved in the same forum. *Id.* at 1044. The problems which the parties had already experienced in discovery (requiring four conferences with the court in a period of two months) would have been magnified if two courts were attempting to manage discovery. *Id. Lutheran Brotherhood* does not cause this Court to conclude that it must retain supplemental jurisdiction over the state law, shareholder derivative claim. Unlike that case, this Court is not faced with deciding whether judicial economy would favor resolving all of the Plaintiffs' claims in one judicial forum, as opposed to splitting those claims between state and federal courts. On the contrary, the state law derivative claim will proceed in state court, regardless of how this Court rules upon the Defendants' requests to retain jurisdiction.[10] The only question to be resolved by this Court is whether judicial economy will be served by forcing the Plaintiffs to pursue that claim in this Court *as well,* with its final resolution dependent upon the race to res judicata. The Defendants have failed to suggest one reason why judicial economy would be fostered if this Court were to require the lead Plaintiffs to file a further pleading which contained the shareholder derivative claim, thus requiring two courts to work toward resolving that same claim.[11]

Additionally, the Defendants argue that the Plaintiffs are using the state court actions inappropriately to evade the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub.L. 104–67, 109 Stat. 737. Those pleading requirements apply only to "private actions arising under this chapter." 15 U.S.C. § 78u–4(b)(1) & (2). The phrase "this chapter" refers to the Securities Exchange Act. The Defendants have not cited any provision of the Securities Exchange Act which suggests that a state law shareholder derivative claim arises under that statute. Therefore, the Court rejects the assertion that it must retain supplemental jurisdiction over the shareholder derivative claim in order to prevent the Plaintiffs from violating the heightened pleading requirements of the PSLRA.

**10.** Of course, if the Court overrules the Plaintiffs' request to declare the stay of discovery to be terminated, the progress of that claim in state court, as well as in this Court, would be delayed.

**11.** Indeed, the Defendants have not even acknowledged that the result of this Court's retention of the shareholder derivative claims would be that two courts would have to work to resolve that claim. The Defendants' unexplained premise seems to be that, if this Court were to retain the shareholder derivative claim, it alone would resolve that claim. If retention of that claim meant that this Court alone would be required to resolve lawsuits arising out of DPL's alleged failed investment strategy, judicial economy would be furthered thereby. However, since that is not the case, this Court is at a loss to understand how requiring two courts to work to resolve a single claim would foster such economy.

In sum, the Court rejects the Defendants' premises in support of their motions. Accordingly, the Court overrules the Motion of the DPL Defendants to Retain Jurisdiction Over Already Filed Derivative Claims (Doc. # 81) and the Motion of Defendant PricewaterhouseCoopers for Joinder in the DPL Defendants' Motion to Retain Jurisdiction Over the Already Filed Derivative Claims (Doc. # 86), in their entirety.

## II. Plaintiffs' Motion for Order Declaring That the Stay of Discovery in the State Actions is Terminated (Doc. # 89)

■ In accordance with a provision of the SLUSA, 15 U.S.C. § 78u–4(b)(3)(D), the Court sustained the Defendants' request to stay discovery in the state court actions in order to allow their anticipated motion to dismiss to be briefed and decided, prior to discovery occurring in either the federal or state cases. *See* Doc. # 76. Therein, the Court also established a schedule in order to ensure that the Defendants' anticipated motion to dismiss would be ruled upon quickly, so that the stay of discovery in the state court actions would not be "overly long." *Id.* at 9. As is indicated, the Court appointed the lead Plaintiffs and lead counsel in accordance with that schedule, and the lead Plaintiffs filed their Consolidated, Amended Complaint in timely fashion. Rather, than submit their motion to dismiss within 20 days of the filing of the Consolidated, Amended Complaint, as directed by the Court's schedule, the Defendants relied on their motions to retain supplemental jurisdiction over the shareholder derivative claim with which they had requested, *inter alia*, that the Court extend their time to move to dismiss. As a consequence, a motion to dismiss which should have been ruled upon by now has yet to be filed, which, in turn, has dashed the Court's hope that the stay of discovery of the state court actions would not be "overly long."

The Plaintiffs argue that the Defendants have unilaterally extended the stay of discovery and request that the Court vacate same. *See* Doc. # 89. According to the Plaintiffs, the Defendants are attempting to delay this action and discovery in the state court actions. In response, the Defendants point out that the Plaintiffs in *Buckeye Electric* sought leave to file a Second Amended Complaint, on September 10, 2002, which pleading would have deleted the shareholder derivative claim. *See* Doc. # 18. The Defendants opposed that request, raising the same arguments that they have put forth in their motions to retain that claim. When the Court effectively mooted the *Buckeye Electric* Plaintiffs' request for leave to amend, without addressing the Defendants' objections thereto, by directing the lead Plaintiffs to file a Consolidated, Amended Complaint, the Defendants sought to have the Court address those objections by filing their motions requesting the Court to retain supplemental jurisdiction over the shareholder derivative claim. In those motions, the Defendants also requested that their time in which to file motions to dismiss be extended until the Plaintiffs had filed a Consolidated, Amended Complaint which included the shareholder derivative claim. According to correspondence between counsel, which the Defendants have attached to their memorandum opposing the request to lift the stay (Doc. # 93), Defendants' counsel, upon the filing of the Consolidated, Amended Complaint, contacted the Court in order to request a conference call to resolve the question of when the motions to dismiss would be due. The Court has no recollection of a telephone call requesting such a conference, although it does not doubt that such a call was made. At any rate, the Court did not schedule such a conference call. Had such

a call occurred, the Court could have informed the Defendants that their motions to dismiss had to be filed within 20 days of the filing of the Consolidated, Amended Complaint, as per the Court's order of February 25, 2003, irrespective of the pendency of the motions to retain jurisdiction. Thus, it is apparent that the Court shares responsibility with the Defendants for the "overly long" stay of discovery in the state court actions.

Since the Court shares responsibility for the Defendants' failure to move to dismiss in timely fashion and the concomitant delay, it will not vacate the stay of discovery. Moreover, it bears emphasis that the Plaintiffs' motion does not challenge the Court's prior conclusion that the SLUSA mandated the granting of that stay in the first instance. Accordingly, the Court overrules the Plaintiffs' Motion for Order Declaring That the Stay of Discovery in the State Actions is Terminated (Doc. # 89).

The purpose of the stay of discovery in the state court litigation was to ensure that a motion to dismiss the federal securities claims could be filed, heard and decided, before discovery had commenced. Fulfilling that purpose, given what has transpired in this case, is costly, given that the Court is continuing to stay discovery in state court litigation, thus frustrating principles of federalism and comity. In order to ensure that the purpose for the stay is realized, while the state courts and the Plaintiffs suffer the minimal continuing impact, this Court hereby modifies the stay so that it shall remain in effect only until the Plaintiffs have filed their memorandum in opposition to the Defendants' anticipated motion to dismiss. Upon the filing of such a memorandum, the stay shall terminate. This modification will require the Plaintiffs to brief that motion, without having had to conduct discovery, while minimizing the continued duration of the stay.

The Court directs the Defendants to move to dismiss within 15 days from date. If the Defendants do not so move the Plaintiffs' Consolidated, Amended Complaint within that time, the most draconian sanctions will be imposed, including the imposition of a default. The parties may brief any such motion in accordance with the local rules. *No further delay will be tolerated.* Should Defendants choose not to file such a motion, the Court must be advised within that 15–day period of time.

The Court notes that an amended case management order has been issued by Common Pleas Court Judge Nadel in *Austern Trust,* which directs the parties to engage in discovery in that lawsuit and, thus, contradicts the stay of discovery which this Court has entered in this litigation and has refused to lift herein. In addition, the Court is greatly disturbed by the Defendants' assertion that certain attorneys representing the Plaintiffs in this litigation specifically asked Judge Nadel to order discovery to begin again in *Austern Trust,* in contradiction of this Court's order. Although every judge is used to having his orders challenged on appeal, it is quite unusual to see those orders ignored. The Court hopes that Plaintiffs' counsel requested Judge Nadel to order discovery to commence in *Austern Trust* under the mistaken impression that this Court's stay of discovery had expired. Since the Court has disabused counsel of that impression herein (or, at least, has attempted to do so), it presumes that Plaintiffs' counsel will return to Judge Nadel in order to ask him to vacate his amended case management order. The Court wishes to stress to all counsel that it will use all powers available to it to see that its orders are obeyed.

The Court notes that the depositions of George Roberts and Scott Stuart are scheduled to take place on August 5th and 6th. *See* Doc. # 105. The court has re-

fused to vacate its stay of discovery herein; therefore that stay remains in effect. *AT THE RISK OF BEING REPETITIVE, THE COURT WILL ENFORCE ITS ORDER WITH ITS CONTEMPT POWERS, IF THOSE DEPOSITIONS PROCEED AS SCHEDULED.*